**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**LAURA M.,[1]**

      **Plaintiff,**

                                      **Civil Action 2:22-cv-2764**
  **v.**                                      **Judge Edmund A. Sargus, Jr.**
                                         **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

**<u>REPORT AND RECOMMENDATION</u>**

Plaintiff, Laura M., brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying her application for

social security disability insurance benefits. This matter is before the United States Magistrate

Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 15), the

Commissioner's Memorandum in Opposition (ECF No. 17), and the administrative record (ECF

No. 11). Plaintiff did file a Reply. The Undersigned **RECOMMENDS** that the Court

**REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this

case to the Commissioner and the ALJ under Sentence Four of § 405(g).

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases,
any opinion, order, judgment or other disposition in social security cases in the Southern District
of Ohio shall refer to plaintiffs only by their first names and last initials.

## I.    BACKGROUND

Plaintiff protectively filed her application for benefits on February 28, 2019, alleging that she has been disabled since April 27, 2014,[2] due to status migraines, depression, anxiety, irritable bowel syndrome and Hashimoto Disease - hypothyroid.  (R. at 219-25, 253.)  Plaintiff's application was denied initially in August 2019 and upon reconsideration in November 2019. (R. at 128-78, 182-88.)  Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 189-90.)  ALJ Deborah F. Sanders (the "ALJ") held a telephone hearing on October 30, 2020, at which Plaintiff, who was represented by counsel, appeared and testified.  (R. at 93-127.) A vocational expert ("VE") also appeared and testified.  (*Id.*)  On December 29, 2020, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 8-58.)   The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-7.)

## II.    RELEVANT RECORD EVIDENCE

The Undersigned thoroughly has reviewed the information set forth in the Administrative Record in this matter.  Given the claimed errors raised by the Plaintiff, rather than summarizing that information at any length here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III.    ADMINISTRATIVE DECISION

On December 29, 2020, the ALJ issued her decision.  (R. at 8-58.)  The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31,

---

[2] Plaintiff amended her alleged onset date of disability to June 17, 2017. (R. at 101, 275-77.)

2

2022.  (R. at 13.)  At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff

has not engaged in substantial gainful activity since June 17, 2017, the amended alleged onset

date.  (*Id.*)  The ALJ found that Plaintiff has the following severe combination of impairments:

migraine headaches, degenerative changes of the lumbar and thoracic spine, left knee

degenerative joint disease, myofascial pain syndrome, obesity, and depressive, anxiety,

obsessive-compulsive, and autism spectrum disorders.  (*Id.*)  The ALJ further found that Plaintiff

does not have an impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(R. at 16.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity

("RFC") as follows:

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can [Plaintiff] perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Climbing ramps and stairs, crouching, and kneeling, are each limited to no more than frequently. Crawling and stooping, are each limited to no more than occasionally. She cannot climb ladders, ropes, and scaffolds, and must avoid all exposure to workplace hazards such as commercial driving, operating dangerous machinery, and unprotected heights. She is limited to no work above noise level three per the Selected Characteristics of Occupations ("SCO"), and must avoid exposure to bright lights such as neon or strobe lighting. Mentally, [Plaintiff] retains the capacity to perform simple routine short cycle tasks that do not require a fast production rate pace, and no strict production quotas, in a relatively static work environment with infrequent changes to job duties from day to day.

(R. at 26.)

At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform her past relevant work as a home attendant. (R. at 49.) At step five, relying on the VE's testimony, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the national economy, such as a mail clerk, electronic worker and electrical accessories assembler. (R. at 50.) The ALJ therefore concluded that Plaintiff has not been disabled since June 17, 2017. (R. at 51.)

## IV.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must

"'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d

270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence

standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices [Plaintiff] on the merits or deprives [Plaintiff] of

a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d

742, 746 (6th Cir. 2007)).

**V.   ANALYSIS**

Plaintiff raises two distinct, but somewhat related, errors: (1) the ALJ's formulated RFC

is not based on substantial evidence, particularly as it relates to the frequency of the Plaintiff's

migraines; and (2) the ALJ erred in her analysis of certain medical opinion evidence.  With

respect to her second claim, Plaintiff argues that the ALJ erred in her evaluation of opinions

offered by Dr. Todd Kerner, Sandra Webster, Ph.D., and Amy Shevrin, LISW.  With respect to

Dr. Webster's opinion, Plaintiff asserts that the ALJ erred by focusing solely on its consistency

with other record evidence and failing to address the issue of supportability. (ECF No. 15 at 20.) For the following reasons, the Undersigned agrees. Accordingly, remand is recommended.[4]

Because Plaintiff filed her application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. § 416.913(a), 416.920c (2017). A claimant's RFC is an assessment of "the most [a claimant] can still do despite her limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in his or her case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1] 20 C.F.R. § 404.1513(a)(1)–(5).

Regarding two of these categories—medical opinions and prior administrative findings— an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim

---

[4]This finding obviates the need for an in-depth analysis of the remaining issues. Thus, the Undersigned need not, and does not, address the alternative bases that Plaintiff asserts support reversal and remand. Nevertheless, on remand, the ALJ may consider Plaintiff's other arguments if appropriate.

or an understanding of [the SSA's] disability programs policies and evidentiary requirements."

20 C.F.R. § 404.1520c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are

supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Indeed, the

regulations *require* an ALJ to "explain how [they] considered the supportability and consistency

factors for a medical source's medical opinions or prior administrative medical findings" in a

benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain

how [they] considered" the other factors. *Id.* The applicable regulations provide the following

guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source

opinions and prior administrative findings:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2); 416.920c(c)(1)-(2).  In practice, this means that the

"supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection

procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No.

5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996

SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. §

404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. §

404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and

"consistency" for purposes of the post-March 27, 2017 regulations)).

Dr. Webster provided a Psychological Assessment Report dated October 20, 2020,

reflecting the results of testing undertaken in two sessions, two days apart and lasting over two

hours each. (R. at 1353-1373.) In that Report, she concluded that Plaintiff met the diagnostic

criteria for autism spectrum disorder. (R. at 1362.) The ALJ found Dr. Webster's opinion

unpersuasive,[5] discussing it in this way:

> The consultative psychologist's opinions from October 2020 are unpersuasive in
> assessing [Plaintiff]'s mental functional limitations, restrictions, and residual
> functional capacity as of the amended alleged onset date of disability (Exhibit
> 60F/11-21). In assessing a residual functional capacity that does not fully embrace
> [Plaintiff]'s subjective reports of symptoms, we evaluate the duration, frequency,
> and intensity of those symptoms, considering a number of factors, including
> objective medical evidence and daily activities (SSR 16-3p). These opinions are
> inconsistent with and unsupported by the totality of the evidence, as discussed
> above, including entirely or mainly normal examination findings that do not support
> the duration, frequency, and intensity of [Plaintiff]'s subjective allegations, and
> activities of daily living in excess of her subjective complaints. As noted above,
> [Plaintiff] graduated from high school in regular classes with good grades, obtained
> a bachelor's degree in electrical engineering technology thereafter, and is able to
> read, write, speak, and understand English (Exhibits 49F/2-3, 1E/1 and 3, and

---

[5] Although the ALJ found Dr. Webster's opinion to be "unpersuasive," presumably in its
totality, she did rely on it to conclude that, due to Plaintiff's non-verbal challenges with
communication and demonstrated idiosyncratic language, Plaintiff had moderate limitations in
understanding, remembering, or applying information. (R. at 22, 40, 42.) She also cited to it in
concluding that Plaintiff had mild rather than no limitations in interacting with others. (R. at 23.)
Further, the Commissioner asserts that the ALJ relied on Dr. Webster's opinion to find Plaintiff had
moderate limitations rather than no limitations in adapting or managing herself given Plaintiff's
impulsivity and seeing herself overwhelmed by multiple areas of activities of daily living. (ECF No.
17 at 7-8 citing R. at 42.) The Commissioner also notes that the ALJ found that Plaintiff had
moderate limitations in concentrating, persisting, and maintaining pace based on Dr. Webster's
findings of problems starting on projects and tasks, planning and organizing activities and tasks, and
breaking down tasks into manageable elements. (*Id.*) To the extent that Commissioner correctly
depicts the ALJ's analysis on these points, the ALJ's discussion of these limitations is buried in her
discussion of the opinion of consultative psychologist Princess Black, Psy.D., dated August 13, 2019.
(R. at 42 citing R. at 1095-1099.)

10D/3, testimony). There is no evidence of impaired intellectual functioning as documented by intelligence quotient scores or school records. The consultative psychologist estimated [Plaintiff]'s intellectual functioning as at least average in August 2019 (Exhibit 49F/4). The claimant had scores in the average to superior range on standardized cognitive testing in October 2020, with general intellectual ability score in the above average range (Exhibit 60F/5-6). The claimant demonstrated normal speech rate and volume with no speech problems at different times (Exhibits 38F/6 and 49F/4). The claimant had intact recognition functioning, and she identified similarities between objects and performed basic arithmetic at the August 2019 psychological consultative examination (Exhibit 49F/4). The claimant repeatedly presented as cooperative and polite with appropriate and normal affect, behavior, and mood (Exhibits 38F/7, 49F/4, 53F/4, 11, 17, 23, 29, and 55, 57F/6, 59F/4, and 60F/9). The clamant denies history of problems getting along with co-workers and supervisors (Exhibit 49F/3). The claimant got along well with peers and teachers in school (Exhibit 49F/2). The claimant denies a criminal legal history (Exhibit 49F/2). The claimant repeatedly presented as alert, awake, and oriented, with normal level of consciousness and thought content (Exhibits 38F/3 and 6-8, 49F/4, 53F/4, 11, 17, 23, 29, and 35, 55F/4, 57F/6, and 59F/4). The claimant presented as oriented with coherent, logical thoughts, and no thought disorder, at the August 2019 psychological consultative examination (Exhibit 49F/4). The claimant had intact attention, concentration, and recall, at that time (Exhibit 49F/4). The claimant followed simple instructions at that time (Exhibit 49F/4). The claimant was not distracted by noises from the office at that time (Exhibit 49F/4). The claimant demonstrated the ability to think abstractly at that time (Exhibit 49F/4). The claimant had no problems following the flow of the interview and completing a digit span exercise at that time (Exhibit 49F/4). The claimant accurately recalled three of three words after a delay of five minutes, and performed a serial seven exercise with no errors, at that time (Exhibit 49F/4). There is no evidence documenting inpatient psychiatric hospitalizations as of the amended alleged onset date of disability (Exhibit 49F/3). The claimant had personal health questionnaire scores of zero at different times (Exhibits 45F/6 and 61F/13).

The claimant has had normal mental status examination results, with no anxiety, depression, and memory and sleep problems (Exhibits 53F/10, 16, 22, 28, and 34, and 59F/3). The claimant's depression is noted as intermittent and mild at different times (Exhibits 47F/1, 48F/1, 50F/7, and 61F/18). The claimant's mental impairments and related symptoms are noted as improved, stable, and in remission, at different times (Exhibits 45F/6, 10, 13, 17, 22, 27, 33, 38, 43, 47, 51, 55, 59, 63, 66, 69-70, 74, and 78, 61F/1, 6, 14, 19, 24, 30, 34, and 38, and 62F/30, 35-36, 40-42, 45, 48-49, 57, 60, 62, 65, 69, 71-72, 76-80, 84, 86-91, 93, 95-96, 98, 103-106, 112, 114, 116, and 121-124). The claimant's mental impairments and related symptoms are concurrent with situational stressors, as she repeatedly endorsed

severe stressors, including financial difficulties and her children's health and school discipline issues (Exhibits 28F/2, 29F/2, 30F/2, 31F/2, 32F/2, 33F/2, 34F/2, 35F/2, 36F/2, 37F/2, 39F/2, 40F/2, 41F/2, 42F/2, 43F/2, 47F/2, 48F/2, 49F/2, 50F/8, 56F/2, 7, 14, 22, 27, 32, 37, 44, 51, and 57, 60F/1-2, and 62F/69). The claimant has presented as insightful with normal judgment, and no judgment deficit (Exhibits 49F/4 and 59F/4).

The claimant denied daily issues with performing hygiene activities (Exhibit 49F/3). The claimant presented with casual dress and appropriate hygiene at the August 2019 psychological consultative examination (Exhibit 49F/1 and 3-4). The claimant is able to live with others (Exhibit 60F/2 and testimony). The claimant is capable of doing small household chores (Exhibit 49F/3). The claimant at least assists in caring for twin daughters with special needs, who do not attend daycare, including getting ready for school (Exhibits 49F/3 and 10D/3, and testimony). The claimant states that she is typically happy with her husband (Exhibit 60F/2).
The claimant has a few friends, with whom she occasionally speaks (Exhibits 49F/3 and 60F/2). The claimant has a drivers' license, but she reports rarely driving (Exhibit 49F/1 and 3). The claimant is able to receive rides from others to places she needs to go (Exhibit 49F/1 and 3). The claimant endorsed moderate activity level including exercising five to six times a week with fitness balls, weights, and doing cardiovascular exercises, from September 2017 through October 2020 (Exhibits 38F/3 and 8, 45F/7, 11, 14, 18, 24, 29, 35, 39, 44, 48, 52, 56, 60, and 67, and 61F/2, 9, 16, 20, 26, 31, 35, and 40). The claimant reports walking for exercise (Exhibit 49F/3).

The claimant is able to shop online (Exhibit 49F/3). The claimant sometimes attends her children's school events (Exhibit 49F/3). The claimant enjoys art projects including crafting and drawing (Exhibits 49F/3 and 62F/62, and testimony). The claimant listens to audiobooks, watches television, and writes (Exhibits 49F/3 and 62F/62, and testimony). The claimant uses electronic mail, the internet, and telephones for verbal conversations and text messaging (Exhibits 49F/1, 55F/15, 62F/42, 2E/2, and 10D/2, and testimony). The claimant reported looking for work in August 2019 (Exhibit 49F/3 and testimony). These opinions are consistent with and supported by [Plaintiff]'s presentation at different times, and activities involving significant understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself, as discussed above. This evidence does not reasonably justify mental functional limitations and restrictions to the extent this source suggests as of the amended alleged onset date of disability. Accordingly, the consultative psychologist's opinions from October 2020 are unpersuasive in assessing [Plaintiff]'s mental functional limitations, restrictions, and residual functional capacity as of the amended alleged onset date of disability.

(R. at 43-45.)

Notably, the above excerpt confirms that, in evaluating Dr. Webster's opinion, the ALJ collapsed the consistency and supportability factors into one analysis.  Indeed, the ALJ's statement that Dr. Webster's "opinions are inconsistent with and unsupported by the totality of the evidence" fails to acknowledge the distinction between, and specific analysis relevant to, the two factors.  Overall, this excerpt reveals that the ALJ failed to meaningfully discuss the supportability of Dr. Webster's opinions – that is to say, the ALJ did not discuss Dr. Webster's "diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel*, 2021 WL 1697919, at *7 n.6.  Indeed, a reader with no previous knowledge of Plaintiff's record would have no information regarding how Dr. Webster reached the conclusions which the ALJ found to be "unpersuasive" as the ALJ did not discuss the objective medical evidence underlying Dr. Webster's opinion as required.  *Id.*  The ALJ failed to do so despite the fact that Dr. Webster evaluated Plaintiff personally over a two-day testing session and discussed her objective findings at some length within her opinion diagnosing Plaintiff's autism spectrum disorder.

To be sure, the ALJ states repetitively throughout her decision, both in conjunction with discussing Dr. Webster's opinion and elsewhere, that "[t]he claimant had scores in the average to superior range on standardized cognitive testing in October 2020, with general intellectual ability to score in the above average range" (*see* R. at 43 citing R. at 1357-1358; *see also* R. at 21, 32, 40, 45).  Nevertheless, this statement, set forth in a laundry list of record citations, fails to provide any insight into the ALJ' s supportability decision.  Similarly unhelpful are the ALJ's

11

citation to observations of Plaintiff's affect, behavior and mood (R. at 43 citing R. at 1361); a reference to Plaintiff's concurrent situational stressors (R. at 44 citing R. at 1353-1354); and certain background information provided to Dr. Webster by Plaintiff, including that she lived with her husband and children, was generally happy with her husband, and had a few friends (*Id.* citing R. at 1354). Again, these record citations, buried within an extensive list of additional and seemingly unconnected record citations, unaccompanied by a related discussion, fail to explain how this information undermines Dr. Webster's opinion.

The Commissioner offers little in response on this issue. At most, the Commissioner follows the ALJ's lead by offering record citations devoid of meaningful explanation.

In sum, given the ALJ's manner of discussion, the Undersigned is unable to determine how the ALJ considered supportability in her evaluation of Dr. Webster's opinion. Of course, the ALJ ultimately may find Dr. Webster's opinion to be unsupported. But, she is obligated to explain her reasoning for doing so. 20 C.F.R. § 404.1520c(b)(2). "An explicit discussion allows Plaintiff to understand how the ALJ reached her ultimate decision." *William G. v. Comm'r of Soc. Sec.*, No. 2:22-CV-213, 2022 WL 4151381, at *8 (S.D. Ohio Sept. 13, 2022), *report and recommendation adopted*, No. 2:22-CV-213, 2022 WL 16745337 (S.D. Ohio Nov. 7, 2022) (citing *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011)). Because the ALJ did not address supportability in any discernible way, her analysis is insufficient. Accordingly, remand is recommended.

## VI. CONCLUSION

For these reasons, it is therefore **RECOMMENDED** that the decision of the

Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of §
405(g).

## VII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that
party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d
Recommendation, specifically designating this Report and Recommendation, and the part in
question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).
Response to objections must be filed within fourteen (14) days after being served with a copy.
Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and
Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge
and forfeiture of the right to appeal the judgment of the District Court.  Even when timely
objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert
v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's
report, which fails to specify the issues of contention, does not suffice to preserve an issue for
appeal . . . .") (citation omitted)).


**Date:**     <u>**March 9, 2023**</u>                          <u>**/s/ *Elizabeth A. Preston Deavers***</u>
                                                              **Elizabeth A. Preston Deavers**
                                                              **United States Magistrate Judge**

13